UNITED STATES of America, Appellee,

v.

Jose Ernesto RODRIGUEZ, Appellant.

UNITED STATES of America, Appellee,

v.

Octavio LEAL–CUEN, Appellant.

Nos. 76–2240, 76–2301.

United States Court of Appeals, Ninth Circuit.

Nov. 17, 1976.

---

* The Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

Frederick F. Kay, Asst. Federal Public Defender (argued), Tucson, Ariz., for appellant in No. 76–2240.

Jose M. Lerma (argued), Lerma, Davis & Vigil, Tucson, Ariz., for appellant in No. 76–2301.

Gerald S. Frank, Asst. U.S. Atty. (argued), Tucson, Ariz., for appellee.

Before BARNES and WALLACE, Circuit Judges, and SOLOMON,* District Judge.

BARNES, Senior Circuit Judge:

## I. FACTS

In about December, 1975, Hugo Riggi was approached by an acquaintance, Armando Rios, who asked if Riggi was interested in buying cocaine. Riggi reported the incident to the Drug Enforcement Administration ("DEA") and subsequently agreed to become a paid informant. Pursuant to instructions from the DEA, Riggi contacted Rios to discuss the purchase of four to five pounds of cocaine. Several discussions were held, many of which were recorded.[1] A sample was passed. But, ultimately, Rios informed Riggi that he would be unable to proceed with the deal.

On January 26, 1976, Rios told Riggi that he would introduce him to a friend who had been involved in the cocaine business for quite some time. Rios directed Riggi to an apartment complex where Riggi met Ernesto Rodriguez. Again, discussions were held. The next day, a sample was passed (from Rodriguez to Riggi via Rios), but the sale was never completed.[2]

---

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

1. The legality of the recordings is not in issue on appeal.

2. Although purported to be cocaine, no expert evidence was ever submitted to indicate that the substance delivered to Riggi was indeed cocaine. However co-defendant Rios, when he took possession of one sample, and after "snorting some," declared it was pretty good cocaine. (R.T. 49.)

However, Riggi later arranged with Rodriguez to have one of Riggi's "buyers" (in reality DEA Agent Joseph Parra) speak with him. On January 31, 1976, Riggi telephoned Rodriguez and introduced him to Parra. A discussion, which was recorded, ensued wherein Rodriguez made arrangements for a future transaction. Agent Parra called back twice that day but was unable to reach Rodriguez. Between February 4th and 7th, ten phone calls were recorded between Parra and Rodriguez, during which time certain details of Rodriguez' operations were revealed.[3] Several times, Agent Parra would call and the phone would be answered by Octavio Leal-Cuen, who on one occasion identified himself as "the friend of Ernesto, an associate of his."

On February 6, 1976, Agent Parra was to meet with Rodriguez. He phoned Rodriguez' number at about 6:30 p. m. but was informed by Leal-Cuen that Rodriguez was not in. When Parra phoned again at 7:10 p. m., he was told that Rodriguez was not back but Leal-Cuen agreed to meet with Parra to discuss arrangements. The meeting occurred later that night and after some discussion it was agreed that an initial sale would be made that night at a motel suggested by Leal-Cuen. Both parties arrived at the motel whereupon Leal-Cuen stated that he would go to get the cocaine. As he left the motel, he was "tailed" by another government agent who observed him rendezvous with Rodriguez. However, when Leal-Cuen returned to the motel, he informed Parra that he could not obtain the drugs. Leal-Cuen then gave Parra one half of the cost of the room and told him to call Rodriguez in the morning.

On February 7, 1976, Agent Parra telephoned Rodriguez and again a meeting was set up but Rodriguez failed to show. Finally, when Parra contacted him later that day, Rodriguez stated that he thought the police were watching him and that he would have to "cool it for the present time."

On February 13, 1976, Riggi again contacted Rios who stated that he would introduce him to the "main man of the operation." Riggi then met Carlos Ochoa[4] and they negotiated for the sale of cocaine. However, the deal was eventually terminated by Riggi without consummation.

A ten-count indictment was filed on March 3, 1976, which was later revised and refiled on March 17, 1976. Count I charged Rios, Rodriguez, Leal-Cuen and Ochoa with a conspiracy to violate 21 U.S.C. § 841(a)(1) by the illegal distribution of cocaine as prohibited by 21 U.S.C. § 846. Counts II through VI charged only Rios. Counts VII and VIII involved only Rodriguez and charged him with the use of a "communication facility" on or about January 31, 1976 to facilitate the commission of a felony involving the distribution of drugs in violation of 21 U.S.C. § 843(b). Count IX charged Leal-Cuen with a similar violation of 21 U.S.C. § 843(b) for his telephone conversation of February 6, 1976. Count X involved only Ochoa.

Both Rios and Ochoa pleaded guilty to one count of the indictment and the remaining counts were dismissed as to them.[5] Rodriguez and Leal-Cuen pleaded not guilty. At trial, Riggi, Agent Parra, and two other government agents were the only witnesses presented. In addition, several of the recorded conversations were placed into evidence.

Prior to submission of the case to the jury, both appellants moved for judgment of acquittal on the grounds of insufficient evidence to link them to the conspiracy. Alternatively, both moved to compel the government to elect to prosecute either on the basis of Count I (conspiracy) or Counts VII and VIII for Rodriguez or Count IX for Leal-Cuen on the grounds that to charge

---

3. In some of the conversations, Rodriguez mentioned that there were "three of them involved in the sale of drugs." (R.T. 71 and 80.)

4. Carlos Ochoa is referred to in appellant Leal-Cuen's brief as Carlos Ochoa-Astengo.

5. Rios pleaded guilty to Count II, possession with intent to distribute, 21 U.S.C. § 841(a)(1). Ochoa pleaded guilty to Count X, use of a communication facility to assist in the commission of a felony involving the distribution of narcotics, 21 U.S.C. § 843(b).

the appellants with both conspiracy and the use of communications facilities to further the conspiracy was "multiplicitus." Finally, appellant Rodriguez moved for acquittal on Counts VII and VIII on the grounds of failure of proof. All of the above motions were denied. The trial judge gave extensive instructions to the jury as to the nature of the crimes charged and also as to the defense of entrapment. Those instructions are not here challenged. The jury returned a guilty verdict on all the counts against the appellants.

## II. ISSUES

1) Did the trial court properly deny appellants' motions for judgment of acquittal based on the grounds of insufficiency of evidence to prove appellants' involvement in the conspiracy?

2) Did the trial court properly deny appellants' motions for judgment of acquittal as to Counts VII and VIII and Count IX respectively and in the alternative to compel the government to elect to prosecute as to Count I or the above counts on the grounds that the above counts are "multiplicitus" (sic), i. e. create a multiplicity, to Count I?

3) Did the trial court properly deny appellant Rodriguez' motion for judgment of acquittal as to Counts VII and VIII because there was sufficient proof as to both counts?

## II–A. Sufficiency of Evidence Demonstrating Appellants' Involvement in the Conspiracy.

Appellant Rodriguez' brief states that he was a "difficult man to locate and put together a deal," that he continually "put off" the agents and never showed up at the arranged meetings. In addition to this alleged lack of cooperation, it is argued that the government did not establish at trial that Rodriguez had the necessary criminal intent. Finally, it is contended that all Rodriguez' actions are really only instances of "puffing" and "loose talk" on his part. Similarly, appellant Leal-Cuen's brief states that he was "duped" by the government

into saying the things that now incriminate him. An attempt is made to portray Leal-Cuen as merely a knowing bystander but not a participant. It is also added that no evidence was presented at trial to demonstrate that he ever had any narcotics to sell.

██ Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act. *Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). The issue raised by appellants is whether there was sufficient evidence of their involvement in an agreement to possess and to distribute cocaine. (*See* Count I of the Indictment, C.T. 32–33.) On appeal from a criminal conviction, this court must construe the evidence direct and circumstantial in a manner consistent with the jury's verdict, resolving all conflicts in the evidence in favor of the prosecution. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Gonzales-Benitez,* 537 F.2d 1051, 1052 (9th Cir. 1976). We cannot weigh conflicting evidence, nor consider the credibility of witnesses.

██ A review of the Reporter's Transcript of the trial clearly indicates that there was sufficient testimony in the record to support the jury's verdict. *United States v. Heck,* 499 F.2d 778, 787 (9th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 677, 42 L.Ed.2d 680 (1974). Initially, it is noted that Riggi testified he had conversations with Rodriguez wherein the latter indicated that he was in possession of and willing to sell cocaine to Riggi. (*See* R.T. 19–21 and 23–25.) In addition, Riggi received a sample of cocaine from Rios who told him it was from Rodriguez. (R.T. 21.) In several of the recorded conversations between Agent Parra and Rodriguez, the latter again indicated that he had a supply of cocaine and that he was willing to sell some of it. The bulk of the conversations involved the planning of the details for the sale. (R.T. 70–74, 78, 79–84, 89–92, 97–100 and 122–123.) On two occasions, Rodriguez states that there are "three of them" participating in the operations. (R.T. 71 and 80.)

Likewise, Leal-Cuen indicated a familiarity with Rodriguez' narcotics transactions in his telephone conversations with Agent Parra. (R.T. 101–102, 104–106 and 107–110.) At one point, Leal-Cuen introduces himself as "an associate of his [Rodriguez]" (R.T. 104), and also states that there are two other people involved with him on his current trip into the United States. (R.T. 117–118.) Leal-Cuen also agreed to meet with Parra and to sell an initial amount of cocaine to him. (R.T. 112–118.) When Leal-Cuen left the motel to obtain the narcotics for Parra, he met with Rodriguez. (R.T. 140–143.)

Whether Rodriguez was indeed only "puffing," and whether Leal-Cuen only a "dupe" of government agents, is not strongly suggested by the evidence submitted at trial. While there was no evidence that narcotics were actually transferred by either appellant to Agent Parra, this is not controlling. *See United States v. Masullo,* 489 F.2d 217, 220 (2d Cir. 1973). There was sufficient evidence that the appellants agreed to sell cocaine. *See United States v. Torres,* 503 F.2d 1120 at 1123–24 (2d Cir. 1974). The decision of the jury should not be reversed.

**II–B.** *The Relationship Between Counts VII through IX Involving the Use of Communication Facility to Further a Conspiracy to Distribute Cocaine, and Count I Involving the Conspiracy Itself.*

While appellants argue that to permit the government to proceed on both the conspiracy count and the substantive use of communication facility counts would be "multiplicitus," the exact nature of their contention is unclear. On the one hand, they refer to permitting the government to "stack charges" against the defendant, for the government could contact the defendant several additional times in order to increase the number of charges against him. However, as pointed out in the government's brief, 21 U.S.C. § 843(b) requires the defendant to "knowingly or intentionally" use the media to commit, cause or facilitate

the commission of any act constituting a felony under that chapter. As the evidence indicated a willing participation in the phone calls by the appellants, their initial contention is without merit. It is also noted that the trial judge's instructions as to entrapment would adequately cover the possibility of any government unfairness in making the calls in the present case.

The next argument raised by appellants is that to separate the conspiracy count from the use of the phone counts would be an "arbitrary" distinction. However, both the conspiracy and the use of communication facility counts are based on separate federal statutes which delineate separate offenses. It is obvious that a conspiracy can be furthered by overt acts, some of which may or may not be criminal in nature. If the former, an individual may be charged with both his participation in the separate criminal act which furthers the conspiracy, and for his participation in the conspiracy. *Cf., Iannelli, supra,* 420 U.S. at 777–778, 95 S.Ct. 1284; *United States v. Bishop,* 462 F.2d 127, 128 (9th Cir.), *cert. denied,* 409 U.S. 951, 93 S.Ct. 296, 34 L.Ed.2d 222 (1972). Convictions based on indictments which contained both of the above counts have been approved by this circuit and others. *See e. g., United States v. Rogers,* 504 F.2d 1079, 1083 (5th Cir. 1974), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975); *United States v. Sisca,* 503 F.2d 1337, 1339 (2d Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *United States v. Murray,* 492 F.2d 178, 192 (9th Cir. 1973), *cert. denied,* 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d 87 (1974).

Finally, appellants assert that entering into a conspiracy is an "agreement" and not an "act" so as to be an "act constituting a felony" as required by 21 U.S.C. § 843(b). That contention is inconsistent with the accepted definition of conspiracy. *See Iannelli, supra,* 420 U.S. at 777–778, 95 S.Ct. 1284. Appellants' precise argument as to § 843(b) has been rejected by the Second Circuit in *United States v. Steinberg,* 525 F.2d 1126, 1132–1133 (2d Cir.

1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). The analysis of this issue in *Steinberg* is convincing.

 Because there was evidence sufficient to present to the trier of fact for its determination, the court below did not err in denying the motion for judgment of acquittal on Counts VII through IX, or alternatively, to force the government to elect to prosecute either the substantive counts or the conspiracy count.

## III. SUFFICIENCY OF EVIDENCE AS TO COUNTS VII AND VIII

As the sentences which appellants are to serve run concurrently and as the conviction of both appellants on Count I should be affirmed, this court in its discretion could decline to reach the issues raised in the other counts. *Barnes v. United States,* 412 U.S. 837, 841, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *United States v. Murray, supra,* 492 F.2d at 186.

However, we hold we will consider the point as to Count VII. We hold that the record does not contain sufficient evidence to affirm Rodriguez' conviction on that count.

Count VII reads as follows:

On or about January 31, 1976, at or near Tucson in the District of Arizona, ERNESTO RODRIGUEZ, did knowingly and intentionally use a communication facility, that is, a telephone, in facilitating the knowing and intentional conspiracy by ARMANDO RIOS, ERNESTO RODRIGUEZ, OCTAVIO LEAL–CUEN, AND CARLOS OCHOA, to possess with intent to distribute, and distribute, in the District of Arizona, quantities of a Schedule II narcotic drug controlled substance, to-wit: cocaine, felonies under Title 21, United States Code, Section 846, in that Ernesto Rodriguez stated, among other things, that he expected to have possession of four (4) pounds of cocaine by 5 p. m. that afternoon; in violation of Title

21, United States Code, Section 843(b). (C.T. 34.)

From the record, the evidence shows that on January 31, 1976, Agent Parra contacted Rodriguez by telephone only once at approximately 5:00 p. m. Although Parra tried on two other occasions to reach Rodriguez on that same day, he was unable to do so. (R.T. 65, 69–74 and 74–75). In the one phone conversation, Rodriguez made certain statements which are described in Count VIII. It is apparent that Count VIII refers to the contents of the completed phone conversation between Parra and Rodriguez as that call occurred on January 31, 1976 and the reference to the necessary presence of two other persons to effectuate the distribution, as delineated in Count VIII, was made therein. (R.T. 71.)

None of the other conversations involving Rodriguez, which were submitted into evidence, occurred on January 31, 1976. Likewise, in none of those conversations did Rodriguez state that "he expected to have possession of four (4) pounds of cocaine by 5 p. m. that afternoon" as charged in Count VII. No witness testified as to a conversation involving a communication facility wherein Rodriguez made such a statement.

 While this court has held that it is not necessary to set forth the exact date and precise location of the telephone call in an indictment charging a violation of 21 U.S.C. § 843(b), *United States v. Murray, supra,* 492 F.2d at 192, nevertheless, where, as here, the government has chosen to do so, it must bear the burden of submitting some evidence to support its precise charge. There are admittedly other conversations involving Rodriguez which appear to amount to violations of 21 U.S.C. § 843(b). However, those conversations are not the basis of the government's Count VII in the present case. We simply find no evidence in the record to support Rodriguez' conviction on Count VII as there is no evidence that the conversation described by the government in Count VII had ever occurred.[6]

6. The attorney for the government stated in the record (R.T. 198) that Count VII concerned a

telephone conversation that occurred between Rodriguez and Agent Parra on January 31,

## IV. CONCLUSION

The convictions of appellants on all counts are affirmed except as to Count VII applying to appellant-Rodriguez only. The judgment of conviction on Count VII is reversed. We remand for the dismissal of Count VII, and the entry of judgment in accordance with this opinion, and the resentencing of Rodriguez, if that is requested by him after remand. We make no suggestion that such resentencing requires, or does not require, any change in the sentence as to counts other than VII.

1976, at about 4:00 p. m. However, the record does not contain any evidence of such phone call on that day at that time. Moreover, the phone conversation which took place at 5:00 p. m. on January 31, 1976 and which served as the basis for Count VIII was the first instance of any discussion between Parra and Rodriguez. (R.T. 65 and 69–70.) In that recorded conversation, Riggi introduces Agent Parra to Rodriguez.