NOT FOR PUBLICATION

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED

APR 15 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10376 |
| Plaintiff-Appellee, | D.C. No. 5:18-cr-00172-BLF-1 |
| v. | |
| MICHAEL KAIL, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted March 27, 2025
Pasadena, California

Before: BOGGS,** FRIEDLAND, and BRESS, Circuit Judges.

Defendant-Appellant Michael Kail was convicted on eighteen counts of wire
fraud, in violation of 18 U.S.C. §§ 1343, 1346; three counts of mail fraud, in
violation of 18 U.S.C. §§ 1341, 1346; and seven counts of money laundering, in
violation of 18 U.S.C. § 1957. After calculating $1,505,000 in actual losses, the

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Danny J. Boggs, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

district court sentenced Kail to thirty months per count to be served concurrently. Kail now appeals his convictions and sentence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review de novo whether an indictment was constructively amended. *United States v. Luong*, 965 F.3d 973, 984 (9th Cir. 2020). We review the "formulation of jury instructions for abuse of discretion, but review de novo whether those instructions correctly state the elements of the offense and adequately cover the defendant's theory of the case." *United States v. Liew*, 856 F.3d 585, 595-96 (9th Cir. 2017). When reviewing whether evidence was sufficient to support a verdict, we "determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *United States v. McCarron*, 30 F.4th 1157, 1162 (9th Cir. 2022) (emphasis omitted) (quoting *United States v. Nevils*, 598 F.3d 1158, 1161 (9th Cir. 2010) (en banc)), and "resolv[e] all conflicts in the evidence in favor of the prosecution," *United States v. Rodriguez*, 546 F.2d 302, 306 (9th Cir. 1976). We review de novo Sixth Amendment public-trial claims. *United States v. Allen*, 34 F.4th 789, 794 (9th Cir. 2022). In determining whether the district court erred in sentencing, "we review the district court's interpretation of the Guidelines de novo, its application of the Guidelines to the facts for abuse of discretion, and its factual findings . . . for clear error." *United States v. Gadson*, 763 F.3d 1189, 1219 (9th Cir. 2014).

1. Kail's challenges to his convictions for wire or mail fraud all fail. As an initial matter, Kail's argument that the indictment was constructively amended to add a property theory of liability misconstrues the wording of the indictment. The indictment charged Kail with devising a scheme "*to obtain money and property* by means of materially false and fraudulent pretenses, representations, promises, and omissions," which "deprived Netflix of . . . its *money and property* by enabling the vendors to . . . negotiate more favorable contracts with Netflix than they would have been able to obtain." The indictment therefore gave Kail "fair notice of the charges" brought under a property theory of liability. *United States v. Holmes*, 129 F.4th 636, 661 (9th Cir. 2025) (quoting *Luong*, 965 F.3d at 985).[1]

In any event, Kail's fraud convictions can all be sustained under the honest-services theory of liability, which the indictment also charged.[2] Kail's challenges

---

[1] Kail argues that the Government's decision to add the property fraud theory three weeks prior to trial was prejudicial because the Government had represented to Kail over almost three years that it was pursuing only an honest-services theory. But whether the Government's strategy allegedly disrupted Kail's preparation is irrelevant to the constructive-amendment issue, which in this case turns on the wording of the indictment on its face, not on the Government's representations about what the indictment meant. *See United States v. Bellot*, 113 F.4th 1151, 1156 (9th Cir. 2024). Nor has Kail raised any other separate claim based on the Government's claimed delay in notifying Kail that it was also pursuing a property fraud theory.

[2] Because Kail's fraud convictions can be affirmed under an honest-services theory, any instructional or sufficiency-of-evidence error pertaining to a property theory of liability was harmless. The jury here was asked to separately find whether Kail was guilty of Counts 1 to 22 under a property theory, under an

3

to the honest-services jury instructions fail.  Kail first argues that the instructions did not cover his defense theory because they allowed the jury to convict Kail for receiving payment in exchange for lawful advising services.  But, contrary to Kail's argument, the instructions provided that the Government must prove that "the defendant knowingly devised or participated in a scheme or plan to defraud Netflix, Inc. of its right to his honest services," and that "to find the defendant guilty of this offense, you must find that the defendant devised or participated in a plan or course of action involving bribes or kickbacks given or offered to the defendant."  The instructions further clarified that "[u]ndisclosed conflicts of interest, secret payments or undisclosed self-dealing alone, is not sufficient to constitute honest services mail fraud."  Taken as a whole, the instructions adequately covered Kail's defense theory because they made clear that merely providing lawful advising services without disclosure to Netflix—though it would be undisclosed self-dealing—would not be honest-services fraud.

Kail next argues that the instructions omitted essential elements of honest-services fraud by allowing conviction without proof of any misrepresentations

honest-services theory, or under both theories.  Because the jury found Kail guilty under the honest-services theory for each count on which he was convicted, no wire or mail fraud conviction depended on the jury's finding Kail guilty under the property theory.  We may therefore affirm Kail's wire or mail fraud convictions under an honest-services theory alone. *See United States v. Pelisamen*, 641 F.3d 399, 406 (9th Cir. 2011).

directed at Netflix. That argument is also unavailing. The district court instructed that an element of honest-services fraud is an "intent to defraud by depriving Netflix, Inc. of the right of honest services," and that to act with "intent to defraud . . . means to act knowingly and with the specific intent to use false or fraudulent pretenses, representations, promises or omissions to cause loss of honest services." The instructions further clarify: "What the government must prove is that the defendant knowingly devised or participated in a scheme or artifice to defraud Netflix, Inc. of its right to the defendant's honest services through bribes or kickbacks." Read together, those instructions are best understood to require proof that Kail made misrepresentations or omissions that were directed at Netflix.

Kail claims that the instructions "did not require proof of a *material* misrepresentation or omission," but he again reads the relevant instructions in isolation rather than in context. As noted above, the instructions required Kail to act with "the specific intent to use false or fraudulent pretenses, representations, promises or omissions to cause loss of honest services." The instructions further required the jury to find that "Kail's act was material; that is, the act had a natural tendency to influence, or was capable of influencing, a person's or entity's acts." Thus, when read in context, the jury instructions required the jury to find that Kail's misrepresentations or omissions were material to Netflix.

Sufficient evidence also supported Kail's convictions under an honest-

5

services theory.[3]  Although Kail observes that "every vendor witness . . . testified under oath that they had no [quid pro quo] agreement" with Kail, the Government presented evidence to the contrary.  As the district court explained, "[w]hile witnesses implicated in the scheme unsurprisingly distanced themselves from the bribes and kickbacks during live testimony, there was ample contemporaneous documentary evidence that illustrated a quid pro quo scheme."  Our independent review of the record confirms this.  "[R]esolving all conflicts in the evidence in favor of the prosecution," we conclude that a rational juror could have found beyond a reasonable doubt that Kail had a quid pro quo with each relevant vendor. *Rodriguez*, 546 F.2d at 306.

2.  The district court did not err in instructing the jury that, as to the money-laundering counts, "[t]he government is not required to prove that Mr. Kail knew that his acts or omissions were unlawful."  Although an essential element of money laundering is the defendant's knowledge that the transactions at issue involved criminally derived property, *see United States v. Lonich*, 23 F.4th 881, 899 (9th Cir. 2022), *overruled on other grounds by United States v. Lucas*, 101 F.4th 1158

---

[3] Kail only challenges whether sufficient evidence supported the existence of a quid pro quo between Kail and each of the relevant vendors.  Any other sufficiency-of-evidence challenge pertaining to the honest-services theory is not "clearly and distinctly" raised in the opening brief  and is deemed forfeited.  *See Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1101 (9th Cir. 2014) (quoting *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009)).

(9th Cir. 2024), the defendant need not know whether the act of money laundering itself is unlawful. *See* 18 U.S.C. § 1957(a); *United States v. Stein*, 37 F.3d 1407, 1410 (9th Cir. 1994). The jury instructions stated that "[i]n regard to Counts 23 through 29, charging Money Laundering . . . [t]he government is not required to prove that Mr. Kail knew that his acts or omissions were unlawful." The specific reference to the money-laundering counts, in addition to a later instruction that "[t]he government must prove that Mr. Kail knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense," correctly stated the knowledge element of money laundering. *United States v. Knapp*, 120 F.3d 928, 932 (9th Cir. 1997).

3. The district court did not err—let alone plainly err—in closing the courtroom.[4] A total courtroom closure is permitted when the closure is narrowly tailored to serve an overriding interest. *Allen*, 34 F.4th at 797. Here, the courtroom closure served the overriding interest of limiting the spread of COVID and was narrowly tailored because, consistent with *Allen*, the district court provided adequate "alternatives" to a public trial by granting all specific requests for in-person attendance. *Id*. at 799. In addition, a live audio feed and trial transcripts were made available to the public. *See United States v. Hougen*, 76

---

[4] We review the district court's courtroom closure for plain error because Kail's request that certain parties attend his trial in person did not constitute a timely objection to the issue he now presses on appeal.

7

F.4th 805, 811 (9th Cir. 2023). Thus, Kail has not shown error in the courtroom closures.

4. The district court did not err in its sentencing calculation. The district court calculated $1,505,000 in actual losses—$120,000 from a contract with Docurated and $1,385,000 from a contract with Vistara. Record evidence supports those factual findings. As to Docurated, there was evidence that Docurated "was not ever a good fit for Netflix because [Docurated's product] did not work with . . . [Netflix's] Mac products" and that Netflix's in-house products could perform the same function. And as to Vistara, there was evidence that the Vistara product was never rolled out, that Vistara "was never trusted," and that "Netflix had other technology that was already doing a better job." Although Kail points to countervailing evidence in the record suggesting that Netflix received at least some value from the contracts with Docurated and Vistara, that countervailing evidence does not show that the district court clearly erred in finding the Government's evidence more compelling.

**AFFIRMED.**