584 P.2d 1204

**The STATE of Arizona, Appellee,**

v.

**Wendell Carroll SHINAULT, Greg Courtland Yocum, Appellants.**

**Nos. 2 CA–CR 1344, 2 CA–CR 1358.**

Court of Appeals of Arizona, Division 2.

Sept. 15, 1978.

John A. LaSota, Jr., Atty. Gen., by Philip G. Urry, Asst. Atty. Gen., Tucson, for appellee.

Dan W. Montgomery, Tucson, for appellant Shinault.

Joseph H. Soble, Tucson, for appellant Yocum.

## OPINION

RICHMOND, Chief Judge.

This is a consolidated appeal. After a jury trial, appellant Yocum was found guilty of unlawful sale of marijuana, conspiracy, second degree, and unlawful transportation of marijuana. Appellant Shinault was found guilty of unlawful possession of marijuana for sale and conspiracy in the second degree.

Of their four contentions on appeal, we find it necessary to deal only with the first because we agree that the trial court should have granted their motions to suppress a ledger containing incriminating entries as the product of an illegal search.[1]

Viewed in the light most favorable to support the trial court's ruling, *State v. Childs,* 113 Ariz. 318, 553 P.2d 1192 (1976), the facts pertinent to the suppression motions are as follows. On September 29, 1975, Ed Cramer, chief of police of Duncan, received a report that a horse was loose. Responding to the call, he recognized the horse as belonging at a residence he believed to be owned by Yocum. Cramer then went to the Yocum residence to advise the occupants that their horse was loose. When he arrived, he noted that the glass was broken out of the house, the curtains were pulled down, and "the furniture was upside down and everything." Cramer

then made a call for assistance to C. C. Farnsworth of the Department of Public Safety, and to Robert Torres of the Greenlee County sheriff's office.

Officers Torres and Farnsworth subsequently accompanied Cramer to the house. They entered and made a cursory search for someone dead or injured. On a couch in the living room they saw what appeared to be a sawed-off shotgun, and on the kitchen table they found marijuana debris, trash can liners, a roll of masking tape, and a set of scales. The officers then went to Duncan and procured a warrant authorizing the search for and seizure of "a usable quantity of narcotics (to wit, Marijuana) and illegal firearms." The validity of the warrant is not contested. Returning to the house, they seized the shotgun, marijuana, marijuana paraphernalia, various loose papers and receipts, and a columnar pad.

The testimony of officers Torres and Farnsworth as to the facts surrounding the seizure of the columnar pad is substantially the same. From an open closet in a bedroom the officers removed a cardboard box containing various papers. Among the papers they discovered a bound columnar pad. Farnsworth opened the pad and found pages with the first names of appellants and entries referring to "dollars and pounds."

A police officer is not required to close his eyes to evidence which is in plain view. *State v. Donovan,* 116 Ariz. 209, 568 P.2d 1107 (App.1977). For seizure of evidence under the "plain view" exception to the Fourth Amendment warrant requirement, however, the officer must have prior justification to be in a position to view the evidence; the discovery of the object must be inadvertent; and its evidentiary value must be immediately apparent to the officer. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *State v. Cook,* 115 Ariz. 188, 564 P.2d 877 (1977).

1. Appellants made a pretrial motion to suppress, which was denied by a judge who did not preside at the trial. The motion was renewed at trial, and again was denied.

In the case before us, when the officers came upon the columnar pad containing the ledger they were searching for marijuana and illegal firearms, those items that were named in a valid search warrant. Though there is some dispute as to exactly how they came upon the columnar pad, we assume without deciding that up to the point the pad was opened, the officers' intrusion was justified.

The testimony of officer Farnsworth indicates the purpose in looking through the papers contained in the box was to find "narcotics, marijuana, and *also some kind of record* to show who had, in fact, lived or had been using that building." The search warrant named only narcotics (marijuana) and firearms. Although the search for marijuana and firearms may have justifiably led to the inadvertent discovery of the box of papers, when the officers continued their search to include a detailed inspection of the contents of the box, specifically the notations in a closed columnar pad, the discovery of the ledger was not inadvertent. Once inside the box, which the officer then recognized as containing nothing but papers, the search was no longer one for narcotics or firearms, but rather for written records.[2]

Even assuming the discovery of the ledger to have been inadvertent, however, the evidentiary value of the columnar pad was not immediately apparent to the officers. Mere evidence, as opposed to fruits or instrumentalities of the crime, may be seized if there is probable cause to believe that a nexus exists between the item seized and criminal behavior. *Warden, Maryland Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *State v. Tosatto,* 107 Ariz. 231, 485 P.2d 556 (1971). We do not conceive how the officers, when confronted with a common columnar pad, without any notation on its cover, could reasonably have concluded that its contents would reveal a connection to the narcotics and firearms lawfully sought. Only after

Farnsworth had opened the book and studied its contents did he notice a reference to a "transaction with something relating in the difference between dollars and pounds."

The language of the Supreme Court in *Coolidge v. New Hampshire,* supra, is appropriate:

"[I]t is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal.

.   .   .   .   .

" *   *   * Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." 403 U.S. at 465–66, 91 S.Ct. at 2037–2038.

Even if the search warrant provided justification for a cursory examination of the box and its contents, when the officers examined the contents of a bound, closed, and outwardly innocuous columnar pad, they entered the impermissible realm of the exploratory search.

Reversed and remanded for a new trial.

HOWARD and HATHAWAY, JJ., concur.

---

2. Also militating against a finding that the discovery of the ledger was inadvertent is the testimony of Farnsworth conceding ample opportunity to secure a search warrant for its contents. *See Coolidge v. New Hampshire,* supra, 403 U.S. at 468–70, 91 S.Ct. 2022.