603 P.2d 550

**The STATE of Arizona, Appellee,**

v.

**Marvel Joe WARREN, Appellant.**

**No. 2 CA–CR 1765.**

Court of Appeals of Arizona,
Division 2.

Sept. 26, 1979.

Rehearing Denied Nov. 6, 1979.

Review Denied Nov. 27, 1979.

**280**

Robert K. Corbin, Atty. Gen., by William J. Schafer, III, and Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Harold Hyams and Samuel F. Jaszewski, Tucson, for appellant.

## OPINION

HATHAWAY, Judge.

Appellant was convicted for possession for sale of a narcotic drug, cocaine, imposition of sentence was suspended, and he was placed on probation for five years on certain terms and conditions. His sole contention on appeal is that the court erred in denying his motion to suppress evidence seized from his person. In the absence of a clear abuse of discretion, we will not interfere with a trial judge's denial of a motion to suppress. *State v. Schutte*, 117 Ariz. 482, 573 P.2d 882 (App.1977). We find no abuse and affirm.

We view the facts in the light most favorable to support the trial court's ruling on the motion to suppress. *State v. Cook*, 115 Ariz. 188, 564 P.2d 877 (1977). On July 17, 1978, several police officers executed a search warrant on a Tucson residence at approximately 8:30 p. m. None of the occupants of the residence was armed but the officers found several weapons on the premises, including four handguns. They also found a police scanner and a large quantity of heroin. During the course of the search three other people entered the residence. A pat-down search of one woman disclosed a concealed knife.

Appellant arrived at the residence at approximately 11 p. m. The front door was open and when appellant entered, Officer Summers, who was standing inside the front door, identified himself to appellant and informed him that he was going to pat him down. The police officers did not know appellant. As the officer approached appellant to pat him down, he observed a large bulge in his right front pants pocket. As the officer reached towards the bulge to check for weapons, appellant reached down and grabbed his hand. Appellant testified he had pushed the officer's hand away. When the officers took him outside for a pat-down search, they had to keep pushing appellant's hands up when he dropped his hands. Appellant again dropped his hands after they had been placed against the wall outside.

Officer Summers testified that his purpose in ascertaining what the bulge was in appellant's pocket was to check for weapons. After he finally succeeded in placing appellant against the wall with his hands up, Summers reached directly into the pocket. He removed a plastic bottle which was partially opaque, but the contents, several aluminum foil-type packets, were readily visible. According to him, he believed there was contraband in the bottle because the foil-type packets resembled the normal packaging of cocaine and heroin for sale. Although it was dark outside, there was sufficient lighting from two outside lights and through the open front door.

Summers also stated that he had received information that the residence searched pursuant to the search warrant was being used both as a stash point for narcotics and for sales from that location. His job that evening was "to help maintain security of the officers" while the search was being conducted. Any one who came into the residence was checked for weapons because narcotics users were known to carry weapons.

The trial court expressly found that the officer was justified in placing his hand in appellant's pocket to remove what was inside the pocket and that although the bottle removed from the pocket was partially opaque, the foil packets were readily visible if the bottle was observed while being turned over or moved.

■ We believe the foregoing evidence satisfies the state's burden in a suppression hearing. Appellant contends that the initial detention violated the Fourth Amendment. Constitutional parameters are spelled out in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, a police officer may effect a limited detention of an individual, not amounting to an arrest, if the officer's actions were reasonable under the circumstances. Considering the circumstances as a whole, the investigative stop of appellant was reasonable.

The Supreme Court of the United States in *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), sets forth the test for Fourth Amendment violations:

"The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). Reasonableness, of course, depends 'on a balance between the public interest, and the individual's right to personal security free from arbitrary interference by law officers.' *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)." 434 U.S. at 108, 109, 98 S.Ct. 332.

When appellant arrived at the residence where weapons, narcotics and a police scanner had been found, and another person previously arriving there had been carrying a concealed weapon, it was not unreasonable for the police officer to believe that the bulge in appellant's pocket might be a weapon such as a small handgun. Under *Terry*, a pat-down search for weapons was justified. Appellant contends, however, that the search of his pocket exceeded the scope of reasonableness. His position is that the officers were limited to a pat-down search and could not reach into his pocket unless the pat down would support a reasonable belief, based on articulable facts, that the object was a weapon. We agree with the state that *Terry* does not limit a weapons search to a so-called pat-down search. Any limited intrusion designed to discover guns, knives, clubs or other instruments of assault are permissible. *U. S. v. Hill*, 545 F.2d 1191 (9th Cir. 1976). We are of the opinion that under the circumstances reaching into appellant's right-hand pocket was not overly intrusive. Appellant's conduct in pushing the officer's hand away when he attempted to pay down the bulge, and his subsequent conduct in dropping his hands, coupled with the fact that other weapons had been discovered on the premises and on a previous visitor, would create a reasonable suspicion that appellant was armed. Appellant's reliance on *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20

L.Ed.2d 917 (1967), involving a pocket search, is misplaced as in *Sibron* there were no facts leading to a reasonable suspicion that the defendant was armed.

■ Finally, we reject appellant's claim of Fourth Amendment violation because of the "search" of the bottle removed from his pocket. Unlike *People v. Brisendine*, 13 Cal.3d 528, 119 Cal.Rptr. 315, 531 P.2d 1099 (1975), relied upon by appellant, the officer did not open the bottle and examine its contents. The trial court found, and Officer Summers' testimony supports this, that the contents of the plastic bottle were visible. A police officer is not required to close his eyes to that which is in plain view. *State v. Shinault*, 120 Ariz. 213, 584 P.2d 1204 (App.1978). There was no "search."

Affirmed.

RICHMOND, C. J., and HOWARD, J., concur.