UNITED STATES of America,
Plaintiff-Appellee,

v.

**Kenneth Joe WHITTEN, John Elmer Gaiefsky, Jack Wayne Gish, Richard Lawrence Shimel, Defendants-Appellants.**

Nos. 82–1315, 82–1293, 82–1294
and 82–1303.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 5, 1983.

Decided May 25, 1983.

---

Hector E. Salitrero, Asst. U.S. Atty., argued; Peter K. Nunez, U.S. Atty.; Hector E. Salitrero, Asst. U.S. Atty., on the brief, San Diego, Cal., for the U.S.

Gerald M. Birnberg, Houston, Tex., for Whitten.

Walter Maund, San Diego, Cal., for Gaiefsky.

H. Dean Steward, San Diego, Cal., for Gish.

Frank J. Ragen, San Diego, Cal., for Shimel.

Before FARRIS and ALARCON, Circuit Judges, and SCHWARZER,* District Judge.

SCHWARZER, District Judge:

Kenneth Whitten and twenty-three codefendants were charged in a twenty-four count indictment with making and selling methamphetamine. The trial court severed the case against four defendants, Whitten, Shimel, Gaiefsky, and Gish, who now appeal from their convictions of various narcotics offenses in violation of 21 U.S.C. §§ 841(a)(1), 846, 843(b), and 848.

Appellants were charged with operating illegal methamphetamine laboratories in Texas and California and with marketing the drug in a number of states. A key point of distribution was Las Vegas, where Debra Howard was arrested, on unrelated charges, on April 2, 1980. Howard agreed to cooperate with federal drug enforcement officials. Based on her information, the police in California and Texas made a number of arrests and searched a number of different locations. Appellants challenge the legality of these searches and seizures. They also contest the sufficiency of the evidence supporting their convictions and challenge various evidentiary rulings of the trial court. We will consider the claims raised by each appellant in turn.

## WHITTEN'S APPEAL

### I. *Sufficiency of the Evidence*

#### A. *Money Order Counts*

Appellant Whitten was convicted of seven counts of using Western Union money orders to facilitate the distribution of methamphetamine (Counts 10–17). The indictment names specific dates on or about which telegraphic money orders were used in drug transactions. At trial, the government introduced into evidence more than thirty money orders and Western Union money order applications. For each date named in the indictment, there is a corresponding money order in which one of the indicted coconspirators or a government witness is the recipient of a large sum of money. The amounts vary but are generally between $2,000 and $6,000.

Roger Loving, an indicted coconspirator separately tried, testified that Whitten customarily used money orders for drug sales. He also testified to personally receiving money orders from a woman named "Pat" in Lubbock, Texas. On Whitten's instructions, he cashed the money orders and gave him the proceeds. Count 13 of the indictment charges Whitten with use of a Western Union money order on or about March 28, 1980, to aid methamphetamine sales. A money order dated March 28, 1980, in the amount of $2,115.65 made out to Roger Loving from Pat Sharp of Lubbock, Texas, was introduced at trial.

Patti Hickey, mother of one of the indicted conspirators, testified that on four or five occasions she picked up money for Whitten at Western Union. Counts 14 and 16 are based on evidence of money orders for $4,000 and $6,000 sent to Patti Hickey in February and March of 1980. Counts 10, 11 and 12 are based on money orders in amounts between $2,000 and $6,000 sent directly to Whitten. Count 15 is based on a money order sent to Jerry Gish, an indicted conspirator separately tried. Count 17 is based on a money order sent to John Gaiefsky, a codefendant in this case.

* The Honorable William W Schwarzer, United States District Judge for the Northern District of California sitting by designation.

Whitten challenges the sufficiency of the evidence to sustain his convictions on Counts 10 through 17 charging violations of 21 U.S.C. § 843(b). He argues that while there is evidence that money orders were sometimes used by defendants to effect sales of methamphetamine, there is no evidence that these particular money orders sent via wiregram on specified dates constituted payments for illicitly distributed narcotics.

 The test of sufficiency of evidence is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). The test is not whether the evidence excludes every hypothesis but that of guilt but whether the trier of fact could reasonably arrive at the conclusion of guilt. *United States v. Rojas,* 458 F.2d 1355, 1356 (9th Cir.1972). The essential elements of the offense with which Whitten is charged in Counts 10 through 17 are: (1) knowing or intentional (2) use of a telegraphic money order (3) to aid or facilitate the distribution of methamphetamine. 21 U.S.C. § 843(b); *United States v. Barnes,* 681 F.2d 717, 723 (11th Cir.1982); *United States v. Rey,* 641 F.2d 222, 224 n. 6 (5th Cir.), *cert. denied,* 454 U.S. 861, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981).

Testimony by coconspirators provided ample evidence that money orders were often used by Whitten in drug sales, that their use was purposeful, and that it aided the distribution of narcotics. The question is whether the government so limited itself by bringing multiple counts and naming specific dates that it failed to sustain its burden of proving the actual violations charged in the indictment.

In *United States v. Murray,* 492 F.2d 178, 186 (9th Cir.1973), *cert. denied,* 419 U.S. 942, 95 S.Ct. 210, 42 L.Ed.2d 166 (1974) a conviction under § 843(b) was reversed for insufficient evidence that telephone calls were used to facilitate the importation of narcotics; the only evidence was tape recordings of calls made by persons other than defendants. There was no evidence that defendants customarily placed their orders for narcotics by phone, that they knew these calls were made, or that these particular calls had any connection with their particular narcotics transactions. *Id.* at 186–87. In *United States v. Rodriguez,* 546 F.2d 302 (9th Cir.1976), a conviction under § 843(b) was reversed where the indictment charged but the government failed to prove use of a telephone to facilitate the distribution of cocaine on a specified date. Because the government elected to set forth the date and location of the telephone call, it was obligated to submit evidence to support its charge. *Id.* at 308. *See also United States v. Valdivia,* 492 F.2d 199, 207 (9th Cir.1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974).

This case is distinguishable from *Rodriguez,* in which there was no evidence that the phone call referred to in the indictment was ever made, and from *Murray,* in which there was no evidence linking the phone calls to the defendants charged with the offense. Here, two witnesses testified that on instruction from Whitten, they had personally picked up and cashed money orders at various times and that Whitten used money orders to effect drug sales. The physical evidence submitted by the government consisted of numerous money orders and money order applications dating from the period of the conspiracy. For each date named in the indictment, there is a corresponding money order for a large sum sent to one of the conspirators or to Patti Hickey, who testified that Whitten asked her to pick up money for him at Western Union on several occasions. The quantity of money orders and the dollar values involved corroborate the testimony that Whitten often used money orders for drug sales. Not only are the sums large, but the money orders were received in quick succession. On March 12, 1980, Whitten was sent one money order for $2,000 and another for $3,000. Less than one week later, on March 17, 1980, he personally received $6,000 via Western Union.

■ These facts, together with evidence that certain of the individuals named as remitters of the money sent via telegram were generally associated with appellant in narcotics activities, are sufficient to make this question one for the jury. *See United States v. Lerma,* 657 F.2d 786, 787–89 (5th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 463 (1982) (evidence of a large number of calls between a narcotics buyer and defendant who was identified as the seller sufficient to establish a violation of § 843(b)); *United States v. Cooper,* 606 F.2d 96, 98 (5th Cir.1979), *cert. denied,* 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980) (testimony that witness sent several money orders and that some of the money used for heroin sufficient to support a conviction on two counts of § 843(b)). Direct testimony linking particular money orders to specific drug transactions would have been preferable. However, we conclude that a rational trier of fact could reasonably have found Whitten guilty of the crimes charged in Counts 10 through 17. The judgment on those counts is affirmed.

### B. Manufacture Count

Whitten was charged in Count 4 with manufacturing methamphetamine between April 15, 1980, and May 5, 1980. The government's only relevant evidence showing that Whitten was making the drug on those dates was the statement of Roger Loving, an indicted coconspirator separately tried, that "Kenny was out cooking somewhere" during that period.

■ The uncorroborated testimony of an accomplice is enough to sustain a conviction, *United States v. Johnson,* 454 F.2d 700 (9th Cir.1972), unless the testimony is "incredible or insubstantial on its face." *Suhl v. United States,* 390 F.2d 547, 550 (9th Cir.), *cert. denied,* 391 U.S. 964, 88 S.Ct. 2035, 20 L.Ed.2d 879 (1968). Loving's testimony was not patently incredible. In the context of the evidence at trial, the jurors could reasonably have found on the strength of that testimony that Whitten was guilty of the crime charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The evidence is sufficient, therefore, to sustain his conviction on Count 4, and the judgment is affirmed.

### II. Duplicitous Counts

Whitten was convicted of two counts of conspiracy to manufacture and possess a controlled substance in violation of 21 U.S.C. § 846 (Counts 1 and 2). The trial judge sentenced him to five year terms on each conspiracy count to run consecutively to each other, but concurrently with consecutive five year sentences imposed on Counts 3, 4, 5, and 6. Whitten was also convicted of engaging in a continuing criminal enterprise to violate the drug laws under 21 U.S.C. § 848 (Count 23) and sentenced to twenty years, to run concurrently with the sentences imposed on Counts 3, 4, 5 and 6. Relying on the Supreme Court's decision in *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), Whitten argues that the convictions on the conspiracy counts must be vacated because they are lesser offenses included in the continuing criminal enterprise conviction.

We need not address this question. The twenty year sentence on the continuing criminal enterprise count is concurrent with the four consecutive five year sentences Counts 3, 4, 5 and 6. Because the judgment on those counts is affirmed, we need not consider the validity of the sentence imposed on Count 23. *United States v. Barker,* 675 F.2d 1055, 1059 (9th Cir.1982); *United States v. Valenzuela,* 596 F.2d 1361, 1365 (9th Cir.), *cert. denied,* 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979); *United States v. Walls,* 577 F.2d 690, 699 (9th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978).

### III. The Search and Seizure Issues

Whitten attacks his convictions on the ground that they are the product of evidence which was illegally seized in a series of searches and which should have been suppressed.

### A. *The Midway Drive Search*

Debra Howard, the key informant in this case, told Drug Enforcement Administration ("DEA") agents that methamphetamine was being manufactured in a cottage at 115 South Midway Drive, Escondido, California. She explained that Whitten and others lived in a large stucco house at the front of the property. On April 15, 1980, ten to twelve DEA agents searched both buildings under the authority of a warrant issued by a federal magistrate. The warrant by its terms authorized the search of both the large stucco house and the cottage at that address.

Only remnants of a laboratory remained in the cottage because Whitten had been alerted to the raid by the arrest of several accomplices in Las Vegas on April 2, 1980. From the large house, the agents seized a large number of photographs and documents including some items conceded to be irrelevant such as jewelry, love letters, marriage papers, and photos not containing evidence of crime. The agents returned the jewelry to its owners. They also seized two locked metal boxes from the bedroom of the large stucco house and returned with them to the office. A thorough investigation of the boxes' contents revealed a large number of irrelevant items. But at the bottom of the boxes the agents found drug paraphernalia including a gram scale and precursor chemicals.

Whitten claims that the search violated the Fourth Amendment because there was no probable cause to search the large stucco house, because the warrant lacked particularity as to the items to be seized, and because the search exceeded the scope of the warrant. Although the manner in which it was conducted was in some respects irregular, we hold that the search was lawful.

### Probable Cause

■ Whitten contends that even if the informant's tip justified the search of the cottage, there was no probable cause to search the large stucco house at the front of the property. When a structure is divided into more than one residential unit, or where two residences are located on a single parcel of property, there must be cause to search each unit. *United States v. Whitney,* 633 F.2d 902, 907 (9th Cir.1980), *cert. denied,* 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981). But a warrant may authorize a search of an entire street address while reciting probable cause as to only a portion of the premises if they are occupied in common rather than individually, if a multiunit building is used as a single entity, if the defendant was in control of the whole premises, or if the entire premises are suspect. *United States v. Gilman,* 684 F.2d 616, 618 (9th Cir.1982).

■ The trial judge found that the large house and the cottage were used as a single unit. Although the affidavit in support of the warrant focused on the cottage which was used as a laboratory, the issuing magistrate and the trial judge reasonably concluded that the entire compound was under the control of Whitten. The district court's finding that there was probable cause to search both houses was not clearly erroneous. *United States v. O'Connor,* 658 F.2d 688, 690 (9th Cir.1981).[1]

### Particularity of the Warrant

■ The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects." U.S. Const. amend. IV. No warrants may issue except those which particularly describe the persons and things to be seized. *Id.* Fear of general warrants and of indiscriminate rummaging among personal belongings motivated the adoption of the Fourth Amendment. *Payton v. New York,* 445 U.S. 573, 583, 100 S.Ct. 1371, 1378, 63 L.Ed.2d 639 (1980).

Whitten contends that the search warrant authorizing in part the seizure of "telephone books, diaries, photographs, utility

---

**1.** We would affirm that finding even if we were to subject the probable cause determination to independent review as a question of law.

bills, telephone bills, and any other papers indicating the ownership or occupancy of said residence" was impermissibly broad.

■ We have upheld warrants authorizing the seizure of items which establish the identity of persons in control of premises. *United States v. Marques,* 600 F.2d 742, 751 n. 5 (9th Cir.1979), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980) ("articles of personal property tending to establish the identity of persons and control of premises"); *United States v. Rettig,* 589 F.2d 418, 421 (9th Cir.1978) ("indicia of the identity of the residents of said house including, but not limited to, cancelled mail, keys, rent receipts, utility bills, deeds, leases and photographs"); *United States v. Honore,* 450 F.2d 31, 33 (9th Cir.1971), *cert. denied,* 404 U.S. 1048, 92 S.Ct. 728, 30 L.Ed.2d 740 (1972) ("articles . . . tending to establish the identify [sic] of the persons in control of the premises . . . including but not limited to utility company receipts, rent receipts, cancelled mail envelopes, and keys"). While a warrant authorizing seizure of *any* photographs or diaries might have been unreasonable, here the scope of those words was qualified by the accompanying language "indicating the ownership or occupancy of said residence." Moreover, the issuing magistrate properly took into account the nature of the crime involved in issuing the warrant. *United States v. Spearman,* 532 F.2d 132, 133 (9th Cir.1976). Where multiple defendants were suspected to have utilized the premises as a laboratory and headquarters for a large-scale illegal drug operation, it was reasonable to authorize the arresting agents to search for evidence showing who occupied and controlled the premises.

Accordingly, appellant's attack on the breadth of the warrant is unfounded.

*Scope of the Search*

■ A search must be confined to the terms and limitations of the warrant authorizing it. *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 394 n. 7, 91 S.Ct. 1999, 2004 n. 7, 29 L.Ed.2d 619 (1971). Searches which require an examination of books, papers and personal effects in a suspect's home are "an especially sensitive matter calling for careful exercise of the magistrate's judicial supervision and control." *United States v. Rettig,* 589 F.2d 418, 423 (9th Cir.1978). Whitten contends that the agents who searched 115 South Midway Drive rummaged through the belongings of its residents and seized materials not described in the warrant.

The facts surrounding the execution of the warrant are these. Austin, the agent in charge of the South Midway search, and the ten to twelve agents assigned to the search attended a thirty minute pre-search briefing. A deployment strategy was adopted and the agents were instructed to take only what was authorized by the warrant. They did not read the warrant itself. Agent Austin testified that he understood that he was empowered to seize not only evidence as to who owned the house, who lived there, and who received mail there, but also every piece of paper with a name on it and every photo with a person in it.

The agents took more than a thousand photographs from the house. Agent Austin explained that he was trying to be selective but did not have time to go through all the photos; he therefore took the lot intending to look through them more thoroughly later. Two metal strong boxes were taken from the bedroom of the stucco house and their contents examined at the DEA offices. The boxes contained love letters, jewelry, marriage, divorce, and custody papers, a billing statement from a lawyer, a probation report, and form printed checks. Underneath these items, the agents found drug paraphernalia and precursor chemicals.

There is a question whether the agents conducting the search were adequately briefed on the terms of the warrant and whether they respected the limitation barring seizure of items not mentioned in the warrant. *See United States v. Heldt,* 668 F.2d 1238, 1254–69 (D.C.Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982). Officers conducting a search should read the warrant or otherwise

become fully familiar with its contents, and should carefully review the list of items which may be seized. A better understanding of the warrant by the agents who searched 115 South Midway Drive on April 15, 1980, might have avoided some of the problems which have occupied the parties and the courts in this lengthy litigation.

We disapprove the removal by the agents from the house of large quantities of papers, photographs, and other items which *might* have been relevant to who lived or worked there. The Midway search points up the practical difficulties in executing a warrant for "indicia of ownership and control of the premises." Although it may be intrusive for police officers to remain in a home and make a careful examination of items to determine whether they fall within the description of the warrant, it is equally intrusive for them to carry off papers and personal effects indiscriminately for later review. *Cf. United States v. Heldt,* 668 F.2d at 1267. Wholesale adoption of the latter practice would be "to invite a government official to use a seemingly precise and legal warrant only as a ticket to get into a man's home, and, once inside, to launch forth upon unconfined searches and indiscriminate seizures as if armed with all the unbridled and illegal power of a general warrant." *Stanley v. Georgia,* 394 U.S. 557, 572, 89 S.Ct. 1243, 1251, 22 L.Ed.2d 542 (1969) (Stewart, J., concurring).

Although the search was not scrupulously confined to the terms of the warrant, it does not follow necessarily that all of the evidence seized must be suppressed. *United States v. Daniels,* 549 F.2d 665, 668 (9th Cir.1977); *Heldt,* 688 F.2d at 1259. We agree with the approach taken by the Court of Appeals for the District of Columbia in *Heldt:*

> Absent ... flagrant disregard [for the terms of the warrant], the appropriate rule seems to be that where officers seize some items outside the scope of a valid warrant, this by itself will not affect the admissibility of other contemporaneously

seized items which do fall within the warrant.

688 F.2d at 1259.

That reasoning should be applied here. All of the items seized at Midway Road and admitted into evidence were things which the DEA agents were authorized to take under the warrant. The trial judge ordered the return of nonrelevant items. The search did not reflect flagrant disregard for the terms of the warrant. For these reasons, the motions to suppress were properly denied.

### B. The Silva Road Search

On August 18, 1981, DEA agents obtained a warrant authorizing them to search for and arrest Kenneth Whitten at 9898 Silva Road in El Cajon, California. They did not find Whitten at Silva Road but remained on the premises for a period of time—between thirty and ninety minutes.[2] While they were in the house, a telephone answering machine in the living room received, recorded and broadcast a call to Whitten from Susanne Hickey, an indicted coconspirator tried separately. After listening to the incoming call which was automatically recorded and played aloud, the agents rewound the tape in order to hear the message a second time. Inadvertently they rewound it past the Hickey call to the beginning of the tape. When they played it back, they overheard a recording of a call from a woman who had recently rented a house to Whitten. The agents called the number which she had left and learned that the rented house was on Lyons Valley Road in Alpine. A number of agents went to the Alpine address and there arrested Whitten.

While present at Silva Road, the agents also seized an orange notebook which lay closed on a coffee table in the living room and a yellow tablet found on top of the refrigerator open to the second or third page. The notebook and tablet were both introduced into evidence. Whitten contends that his Fourth Amendment rights

---

**2.** The testimony of the various agents who searched the Silva Road house is in conflict on this point, but neither the government nor defendants pursued it at trial.

were violated when the agents played back the recorded messages on the answering machine and when they seized the orange notebook and the yellow tablet.

## Tape Recordings

The trial judge denied the motion to suppress the recorded messages, finding that there was no reasonable expectation of privacy in the contents of any of the communications because the first was broadcast aloud and the others were inadvertently overheard. The motion to suppress was properly denied.

■ The occupants of Silva Road had no legitimate expectation of privacy in the contents of the Hickey call because the speaker on the recording machine had been turned on, making incoming calls clearly audible to any person present in the room where the answering device was located. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *See also United States v. Kenny,* 645 F.2d 1323, 1339 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981), (phone conversation recorded by party to conversation acting as government informant); *United States v. Ortiz,* 603 F.2d 76, 79 (9th Cir. 1979), *cert. denied,* 444 U.S. 1020, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980) (inside of gas station visible from a public place); *United States v. Coplen,* 541 F.2d 211, 214–15 (9th Cir.1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 791 (1977) (interior of airplane visible from parking lot of airport); *United States v. Fisch,* 474 F.2d 1071, 1076– 77 (9th Cir.), *cert. denied,* 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973) (conversation audible in adjoining motel room). Here, as the trial judge found, the volume on the device was turned up so high that it could be heard outside as well as inside the house.

A different question is presented by the contents of the earlier recorded message which was not overheard by the agents until the tape was rewound and replayed. The government contends that even if appellant did have a legitimate expectation of privacy in the contents of the earlier call, the agents came across it in "plain view" when, seeking to verify the contents of the Hickey message, they accidentally rewound the tape past the earlier message.

■ Under the "plain view" exception to the warrant requirement, an officer who is lawfully present at a location may seize anything which immediately appears to be evidence and whose discovery is inadvertent. *Washington v. Chrisman,* 455 U.S. 1, 5–6, 102 S.Ct. 812, 816, 70 L.Ed.2d 778 (1982); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Application of the "plain view" exception to this case raises two issues: first, whether at the time the agents came across the recorded message they were lawfully on the premises, and, second, assuming their lawful presence, whether they came across it inadvertently.

With respect to the first issue, appellant does not dispute that the initial entry into and search of the Silva Road house was lawful under the *Prescott* warrant. *United States v. Prescott,* 581 F.2d 1343 (9th Cir. 1978). He argues for the first time on appeal, however, that the "plain view" exception cannot be invoked because the agents, having failed to find Whitten, were no longer lawfully present when they discovered the message on the tape. Appellant did not raise this issue in the motion to suppress or the supporting memorandum filed in the trial court. The only reference to it is found in a passing comment by defense counsel at the end of his oral argument on the motion to suppress; counsel there described it as an "extraneous" issue.[3]

3. Counsel's remarks on this issue were as follows:

I don't believe the *Prescott* warrant will allow you, or certainly not an arrest warrant will allow you to stay there, because both of them are premised, and necessarily, Your Honor, on the assumption that he's there

now, and if you don't have reasonable cause to believe he's there now, you can't enter even with a *Prescott* warrant.

Now, when it turns out that you were wrong, you have to leave, you can maintain surveillance, and if you see him coming in, go get another *Prescott* warrant, no problem

The trial court was not asked to and did not make a finding on it.

■ As a general rule, an issue not presented to the trial court cannot be raised for the first time on appeal. *People of the Territory of Guam v. Okada*, 694 F.2d 565, 570 n. 8 (9th Cir.1982); *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir.1978) (citing *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)). Several policies underlie this rule. It would be unfair to surprise litigants on appeal by final decision of an issue on which they had no opportunity to introduce evidence. *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Judicial economy and sound judicial administration require that issues critical to the conduct of the trial, such as grounds for suppressing evidence, be presented initially to the trial judge for decision.[4]

■ Exceptions to the general rule are recognized where a new theory or issue arises while an appeal is pending because of a change in the law, *Hormel*, 312 U.S. at 557–58, 61 S.Ct. at 721; *Singleton*, 428 U.S. at 120–21, 96 S.Ct. at 2877, or where the issue conceded or neglected below is purely one of law and does not affect or rely on the factual record developed by the parties, *Patrin*, 575 F.2d at 112; *United States v. Gabriel*, 625 F.2d 830, 832 (9th Cir.), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1980), or where plain error has occurred and injustice might otherwise result, *Okada*, 694 F.2d at 570 n. 8; *United States v. Fong*, 529 F.2d 55 (9th Cir.1975).

■ None of these exceptions applies here. Appellant's argument is not based on new law. Nor does resolution of the issue in the context of this case present a pure question of law. Factual questions such as the precise length of time the agents remained on the premises, the likelihood that the person specified in the warrant might return, and other factors tending to support the reasonableness of the agents' continued presence on the premises under the circumstances might bear decisively on the determination of the legal question whether the Fourth Amendment was violated. Finally, given the strength of the evidence against appellant in this case, and the fact that the exclusionary rule is a judicially created remedy to effectuate rights secured by the Fourth Amendment and not a constitutional imperative, *Stone v. Powell*, 428 U.S. 465, 482–83, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976), no fundamental injustice will result from our declining to decide a question not presented to the trial court.

■ With respect to the second issue, appellant argues that the contents of the earlier recorded messages were not in plain view because they could not be revealed without the purposeful use of the answering machine. Appellant relies principally on *Walter v. United States*, 447 U.S. 649, 657, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980) and *State v. Turkal*, 93 N.M. 248, 599 P.2d 1045 (N.M.1979) (cited with approval in *United States v. Wright*, 667 F.2d 793, 799 n. 6 (9th Cir.1982)). The cases do not support so broad a proposition. In each of them, agents lawfully came into possession of tapes or films whose contents they listened to or viewed without first obtaining a warrant. Their purpose was clearly explor-

with that, or in a case where you're entering a person's residence if that's the person you're seeking to arrest, no problem with entering, time and again, and I would suppose pursuant to that arrest warrant. But a *Prescott* warrant doesn't give you a right to camp out in a man's house, and that's what constitutes an unreasonable extension.

So we're not even sure they were legitimately on the premises at the time they heard the tape.

But all of those issues are extraneous, and in the interest of fairness, I mean to give the government equal time to respond. (R.T. 821–22).

4. *See Wainwright v. Sykes*, 433 U.S. 72, 88–90, 97 S.Ct. 2497, 2507–08, 53 L.Ed.2d 594 (1977), where the Court, in enforcing a contemporaneous-objection rule, stressed its importance in permitting the trial judge to make necessary factual determinations, contributing to finality in criminal litigation, and conserving social resources. *Cf. Partenweederei, MS Belgrano v. Weigel*, 313 F.2d 423, 425 (9th Cir.1963).

atory. It was this deliberate exploration, not the use of a machine, that made the "plain view" exception inapplicable. *See Stanley v. Georgia,* 394 U.S. 557, 571–72, 89 S.Ct. 1243, 1251, 22 L.Ed.2d 542 (1969) (Stewart, J., concurring); *Coolidge v. New Hampshire,* 403 U.S. at 466–67, 91 S.Ct. at 2038. The district judge specifically found that the complete rewinding of the tape and the hearing of the earlier message were inadvertent. That finding was not clearly erroneous.

*The Orange Notebook and Yellow Pad*

■ The government seeks to justify the seizure of the orange notebook and the yellow pad on the ground that they are evidence of criminal activity found in plain view. The "plain view" exception applies "only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Coolidge v. New Hampshire,* 403 U.S. at 466, 91 S.Ct. at 2038: "To assure that warranted searches do not result in 'exploratory rummaging' the plain view doctrine limits the right of seizure to items, the incriminating nature of which is immediately apparent to the searching officer." *United States v. Wright,* 667 F.2d at 797.

■ Applying the plain view rule as elaborated in the cases to the situation here, the seizure of the orange notebook was impermissible. There was nothing facially incriminating about the closed notebook from which the DEA agents could reasonably have concluded that it might contain evidence of crime. *See State v. Shinault,* 120 Ariz. 213, 584 P.2d 1204 (Ariz.App.1978).

■ The yellow pad, however, was open to the second or third page when discovered by one of the agents. That page read: "Move cars to new place. Calls: Sammy Roscoe; 10 [gallons]. Big. Glass beads, 60 degree adaptor." In the context of this investigation into large-scale methamphetamine manufacture and distribution, the incriminating nature of this evidence was readily apparent to the agents.

While the admission into evidence of the orange notebook was error, the error was harmless and does not mandate reversal. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). It was admitted near the end of the trial without any discussion of its contents; indeed the trial transcript does not disclose its relevance or what information it contained. In light of the overwhelming evidence against Whitten, its admission was harmless beyond a reasonable doubt.

**C. *The Lyons Valley Road Search***

On the basis of the information from the tape recorded message at Silva Road, the DEA agents proceeded to the Lyons Valley Road address in the town of Alpine and arrested Whitten on a warrant as he emerged from the residence on that property. Parked in the driveway were two motorcycles and a yellow sportscar. After arresting Whitten, the agents entered the house and made a cursory investigation finding methamphetamine on a table in the living room and on paper plates in the kitchen and a handgun on the fireplace mantle. Agent Jones approached a shed adjoining the house and detected strong chemical odors emanating from it, leading him to believe that the shed contained a drug laboratory. His suspicions were confirmed upon entry when he discovered a methamphetamine laboratory in full operation. Because the area was remote, the agents could not make radio or telephone contact with their fellow agents. After securing the house and shed, one of the agents obtained a telephone warrant for both buildings. Using the warrant, the agents conducted a more complete search of each building. They photographed the rooms and discovered papers such as invoices and car registrations linking Whitten and appellant Richard Shimel to the location.

The evidence against Whitten seized from the Lyons Valley Road residence is of three kinds: (1) methamphetamine powder and the drug laboratory equipment, (2) photo-

graphs of the interior of the two buildings, and (3) various documents from a lockbox and from other locations inside the house.

Whitten makes three contentions with respect to this search: first, that the initial warrantless entry into the house and shed following his arrest was without legal justification; second, that the telephone warrant upon which a more thorough search of the premises was based was defective because overbroad; third, that the agents failed to comply with the procedural requirements of Rule 41(c)(2) of the Federal Rules of Criminal Procedure in applying for the warrant.[5]

*Warrantless Entry*

The district court upheld the post-arrest entry, reasoning that the agents properly conducted a protective sweep of the entire premises following Whitten's arrest. The trial judge cited a number of reasons for the agents' belief that persons other than Whitten might be present and dangerous. Three vehicles, not one, were parked in the driveway. The area was remote and a number of codefendants were unaccounted for. The agents could not make radio or telephone contact with other DEA agents. Members of the drug ring were believed to be armed and in the general area. And there was evidence suggesting an operating illegal laboratory and a danger of possible explosion.

■■■■ A protective sweep of a building without a warrant may be justified by exigent circumstances if the officers reasonably believe that there might be other persons on the premises who could pose a danger to them. *United States v. Gardner,* 627 F.2d 906, 909–10 (9th Cir.1980). However to excuse this departure from the usual requirement of a warrant, the executing officers must be able to "point to specific and articulable facts" supporting their belief that other dangerous persons may be in the building or elsewhere on the premises. *United States v. Dugger,* 603 F.2d 97, 99 (9th Cir.1979) (quoting *Terry v. Ohio,* 392

U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). The circumstances found by the trial judge provide ample justification for the protective sweep of both the residence and the laboratory at the Alpine location.

With respect to the shed, additional exigency was created by the agents' reasonable belief, under the circumstances, that a methamphetamine laboratory was in operation. The trial judge specifically found that the risk of explosion presented an exigent circumstance that would have justified an immediate warrantless search. His findings are supported by the record and by the law. *See United States v. Williams,* 630 F.2d 1322, 1326–27 (9th Cir.), *cert. denied,* 449 U.S. 865, 101 S.Ct. 197, 66 L.Ed.2d 83 (1980) (risk of explosion from PCP lab in mobile home).

*The Telephone Warrant*

■■■■ The Fourth Amendment expressly provides that no warrants may issue except those "particularly describing the place to be searched, and the persons and things to be seized." U.S. Const. amend. IV. Appellant Whitten contends that the telephone warrant subsequently issued which authorized the agents to search for "methamphetamine and evidence of narcotics trafficking" was overbroad.

This language of the warrant did not enable the officers executing it to confine their search to particular items whose seizure was authorized by the issuing magistrate. In *United States v. Crozier,* 674 F.2d 1293 (9th Cir.1982), this court held invalid a warrant which permitted the seizure of "material evidence of violation of 28 U.S.C. § 841, 846. Manufacture and possession with intent to distribute amphetamine and conspiracy." *Id.* at 1299. The warrant in this case suffers from the same defect of overbreadth. The term "evidence of narcotics trafficking" did not adequately confine the discretion of the agents executing the warrant. *Andresen v. Maryland,* 427

---

**5.** Because we hold that the telephone warrant was overbroad, we do not reach the questions raised by appellant concerning the procedure used to obtain the warrant and the requirements of Rule 41(c) of the Federal Rules of Criminal Procedure.

U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976).

While the telephone warrant which authorized the search of Lyons Valley Road was overbroad, its invalidity affects only a few items. Of the evidence seized there and used against Whitten, only the miscellaneous papers linking him to the location were the product of the warrant search. The methamphetamine discovered in the house and the drug laboratory discovered in the shed were in plain view when the officers conducted the protective sweep. The trial judge properly denied their suppression. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The photographs of the interior were also properly admitted since they represent only what was plainly visible to the agents in the course of their initial lawful sweep of the premises.

The papers tying Whitten to the location—a motorcycle service order made out to Whitten and several automobile registrations in his name—were not in plain view and were improperly admitted. In the light of all the evidence presented against Whitten in this case, however, the admission of these papers was harmless beyond a reasonable doubt and is not a basis for reversing his convictions. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *United States v. Armstrong,* 654 F.2d 1328, 1336 (9th Cir.1981), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 315 (1982).

### GAIEFSKY'S APPEAL

John Gaiefsky was arrested in the doorway of his room in the Las Vegas Hilton Hotel on the morning of April 3, 1981. The testimony at trial of the arresting DEA agent and one of the arresting police officers establishes that when Gaiefsky answered the door, he was immediately arrested and handcuffed and placed in a chair inside the room. The agent and officers then searched the room for a gun which their informant had told them Gaiefsky carried. The gun was found under a pillow on the bed. Gaiefsky, who was in his underwear, then asked to get dressed before being taken to jail. The officers handed him his clothes. At some time while they were in the room, one of the arresting officers observed a bottle containing a white powder on the table next to the chair where Gaiefsky was sitting. The powder, but not the gun, was received into evidence at the trial.

Gaiefsky moved to suppress the evidence seized in his room on three grounds. The first two are without merit. He argues that there was no probable cause for his arrest because the information given by Debra Howard was not sufficiently reliable to meet the test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). That information was detailed, however, and was corroborated by police investigation. *United States v. Moreno,* 569 F.2d 1049, 1052 (9th Cir.), *cert. denied,* 435 U.S. 972, 98 S.Ct. 1615, 56 L.Ed.2d 64 (1978). The trial court's finding of probable cause is amply supported. Gaiefsky also argues that his arrest violated the rule of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), barring warrantless entry to make an arrest. A doorway, however, unlike the interior of a hotel room, is a public place. *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). No warrant was therefore required to make the arrest.

Gaiefsky's principal argument is that the warrantless entry into his room violated the Fourth Amendment. The trial court denied the motion to suppress, finding exigent circumstances because "there was a danger of destruction of evidence, flight and increased danger to the arresting officers."

"[A] search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable unless the police can show that it falls within one of the carefully defined set of exceptions based on the premise of 'exigent circumstances.'" *Coolidge v. New Hampshire,* 403 U.S. 443, 474–75, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971); *Payton v. New York,* 445 U.S. 573, 586 n. 25, 100 S.Ct. 1371, 1380 n. 25, 63 L.Ed.2d 639 (1980).

The court below found exigent circumstances based upon danger of destruction of evidence, flight, and danger to the arresting officers. There was no evidence of imminent danger of destruction of evidence in the room; one of the officers testified that he had no information that Gaiefsky was in the process of destroying evidence and did not know whether anyone else was in the room. There was no evidence of risk of flight or danger to the officers; Gaiefsky had been handcuffed immediately on his arrest and no one testified that the officers suspected the presence of anyone associated with Gaiefsky in the vicinity.

An arrest on probable cause outside the arrestee's premises does not "provide its own 'exigent circumstance' so as to justify a warrantless search of the arrestee's house." *Vale v. Louisiana,* 399 U.S. 30, 35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970). The burden is on the government to establish the availability of an exception to the warrant requirement. *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951). Inasmuch as evidence of exigent circumstances is totally lacking from the record, the finding to that extent is clearly erroneous.

Nor can the entry into Gaiefsky's room be justified as a search incident to arrest. At the time of his arrest in the doorway, Gaiefsky was handcuffed and nothing in the room was within his reach. The rule of *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), "does not permit the arresting officers to lead the accused from place to place and use his presence in each location to justify a 'search incident to the arrest.'" *United States v. Mason,* 523 F.2d 1122, 1126 (D.C. Cir.1975). If a search of a house is to be upheld as incident to an arrest, that arrest must take place inside the house. *Vale v. Louisiana,* 399 U.S. at 33–34, 90 S.Ct. at 1971.[6]

Finally, there is no evidence from which one could infer that Gaiefsky consented to the officers' entry into the room. Although the testimony is not wholly clear, it appears that Gaiefsky did not ask to be allowed to dress until after the officers had taken him into the room immediately upon his arrest and without his consent. Absent such a "specific request or consent," the officers' entry was unlawful. *United States v. Anthon,* 648 F.2d 669, 675 (10th Cir.1981), *cert. denied,* 454 U.S. 1164, 102 S.Ct. 1039, 71 L.Ed.2d 320 (1982) (suspect arrested in hotel hallway wearing a bathing suit and returned to his room). *See also United States v. Kinney,* 638 F.2d 941, 945 (6th Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3056, 69 L.Ed.2d 423 (1981); *Giacalone v. Lucas,* 445 F.2d 1238, 1247 (6th Cir.1971), *cert. denied,* 405 U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 795 (1972) ("Appellant's decision to walk from the dining room to his bedroom in order to change into more appropriate clothing was voluntary and consensual.").

The rule governing consent searches is clear. "[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer,* —— U.S. ——, ——, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). The government has failed to sustain that burden.

The drugs seized in the room were relevant evidence supporting the charges against Gaiefsky in Counts 2 and 6. The admission of that evidence was not harmless beyond a reasonable doubt. *Chapman*

---

**6.** We are not inclined to follow *United States v. Burns,* 624 F.2d 95 (10th Cir.), *cert. denied sub nom. Reynolds v. United States,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980), upholding a search using a drug-detecting police dog of a motel room whose occupant had been arrested in the doorway. The court stated that "[g]enerally, a limited, warrantless search of a motel room incident to the lawful arrest of its occu-pants is permissible .... This principle applies where, as here, the arrest occurs at an entrance way." *Id.* at 101. This statement appears to us to be inconsistent with *Vale* and with *Chimel,* which authorizes a search only of the area within an arrestee's "immediate control." *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040.

*v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The conviction on those counts must therefore be reversed.

## SHIMEL'S APPEAL

Appellant Shimel was convicted of two counts of conspiracy to manufacture and to distribute methamphetamine (Counts 1 and 2) and of two additional counts of manufacture and of possession with intent to distribute the drug on August 18, 1981 (Counts 20 and 21). He was sentenced to concurrent five-year terms on the conspiracy counts and to five-year terms on the two substantive offenses to run concurrently with each other, but consecutive to the conspiracy sentences.

On appeal, Shimel challenges the legality of the warrantless rewinding of the tape machine at Silva Road which led to the discovery of evidence linking him to the drug operations at Lyons Valley Road, Alpine. As discussed above, the inadvertent discovery of the message on the recording machine at Silva Road did not, in the circumstances, violate appellant's rights under the Fourth Amendment. He also contests the Alpine search, the admission of a hearsay statement, and the sufficiency of the evidence to support his convictions.

### Factual Summary

Using false names, Shimel and Whitten negotiated the rental of the Lyons Valley Road premises in Alpine. Shimel gave the owner the first and last month's rent plus a security deposit. In the course of the search conducted under the authority of the telephone warrant which we have found to be overbroad, the DEA agents found the following evidence linking Shimel to drug manufacture at Lyons Valley Road: an invoice made out to Shimel discovered in a steel floor safe and a piece of paper with his signature on it in a pile of clothes on the back porch of the house. He was charged in Counts 20 and 21 with manufacture of methamphetamine and with possession with intent to distribute the drug on August 18, 1981, the date of the Alpine search. Had the papers seized from the Lyons Valley house been excluded, the only remaining evidence tying him with the Alpine lab would have been the testimony of the owner of the property that she rented it to Shimel and took cash from him for the deposits.

### Search and Seizure

Where illegally seized evidence is introduced at trial, reversal is mandated unless the prosecution establishes that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Bumper v. North Carolina,* 391 U.S. 543, 550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). Because of the dearth of other evidence linking Shimel to actual drug manufacture on August 18, 1981, the admission into evidence of papers connecting him with activities at the Alpine house and laboratory was clearly prejudicial. Accordingly, his convictions on Counts 20 and 21 must be reversed. As discussed in the following paragraphs, however, there is ample evidence to support his conspiracy convictions under the *Chapman* test.

### Sufficiency of the Evidence

There remains to be considered appellant's convictions on the two conspiracy counts. Shimel charges that the evidence was insufficient to support these convictions. The test for sufficiency of evidence is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). The evidence on the conspiracy charges consisted of a photograph seized at Midway Road showing Shimel holding a bag of white powder; testimony by Roger Loving, an indicted coconspirator, that Whitten told him that Shimel worked for Whitten in Florida and Houston and had "cooked" for him at the Houston lab; a money order from Pat Sharp to Shimel for $1,969 dated March 23, 1981; Shimel's fingerprint lifted from glassware found in Whitten's Houston lab; and testimony that Shimel with Whitten rented the Lyons Valley Road premises under false names.

Loving's statements concerning what Whitten had told him about Shimel's involvement in the drug ring were properly admitted under Rule 801(d)(2)(E) of the Federal Rules of Evidence as statements of a coconspirator made during and in furtherance of the conspiracy. Whitten made the statements to Loving some eight or nine months after the two had met. Loving's business had been doing badly and he was in debt. After meeting Whitten, he started helping him procure and sell drugs, as well as selling them on his own. His principal contacts with Whitten in the first months of the relationship were through Loving's daughter. Loving testified that he met Shimel while visiting his daughter, and that Whitten told Loving that Shimel started out with Whitten in Florida, had "cooked" for him in Houston, and had worked for him "all this time."

■■■■ For a statement to qualify as non-hearsay under the coconspirator provision of the Federal Rules of Evidence, the trial judge must determine that there is sufficient evidence to support an inference that the statement was made in furtherance of the conspiracy. *United States v. Eubanks,* 591 F.2d 513, 519 (9th Cir.1979). Mere conversations or casual admissions of guilt are not admissible as declarations to advance the objectives of the conspiracy. *United States v. Moore,* 522 F.2d 1068, 1077 (9th Cir.), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976). On the record before him, the trial judge could reasonably have concluded that Whitten's statements to Loving were intended, in part, to assure Loving's continued participation in Whitten's drug activities. As such, they were properly admitted under Rule 801(d)(2)(E). *United States v. Anderson,* 642 F.2d 281, 285 (9th Cir.1981); *United States v. Eubanks,* 591 F.2d 513, 520 (9th Cir.1979); *United States v. Jackson,* 549 F.2d 517, 533–34 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977); *United States v. Dorn,* 561 F.2d 1252, 1256 (7th Cir.1977).[7]

■■■ Loving's statements together with documentary and other evidence linking Shimel to the Whitten conspiracy adequately support the jury's verdict on Counts 1 and 2. The jurors could reasonably have concluded from this evidence that Shimel was guilty of the conspiracies charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). Accordingly, his conviction on Counts 1 and 2 are affirmed.

### GISH'S APPEAL

Appellant Gish was convicted of conspiracy to possess methamphetamine with intent to distribute in violation of 21 U.S.C. § 846 (Count 2). The trial judge sentenced him to three years. Gish challenges the denial of an evidentiary hearing to test the contents of an affidavit supporting a search in Lakeway, Texas, which yielded evidence implicating him in the Whitten drug ring. He also claims error in the admission of hearsay evidence during the suppression hearings and in the instructions given the jury on conspiracy.

*Denial of an Evidentiary Hearing*

At a pretrial hearing Gish challenged the truthfulness of a sworn statement used by the Texas police to procure a search warrant. Gish claims that the police deliberately falsified the affidavit accompanying the warrant and that they invented the informant who provided the tip on which the warrant was based. The trial judge denied a request to hold an evidentiary hearing on the issue of veracity.

■■■ A defendant is entitled to an evidentiary hearing to test the contents of an affidavit supporting a warrant if he shows, by a preponderance of the evidence, that the affiant deliberately or recklessly made a false statement necessary to establish probable cause. *Franks v. Delaware,*

---

**7.** Appellant also charged that the admission of Loving's statements violated the Confrontation Clause of the federal constitution. That issue was not preserved by a proper objection at trial and we do not consider it here. *See United States v. Traylor,* 656 F.2d 1326, 1333 & n. 6 (9th Cir.1981).

438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The officer who prepared the affidavit testified that he had a confidential informant who had been inside the location searched and seen methamphetamine. Gish failed to make a preliminary showing that the officer deliberately or recklessly falsified his affidavit. A *Franks* hearing was properly denied by the trial judge. *United States v. Young Buffalo,* 591 F.2d 506, 510 (9th Cir.), *cert. denied,* 441 U.S. 950, 99 S.Ct. 2178, 60 L.Ed.2d 1055 (1979).

*Improper Jury Instructions*

 Gish claims that the jury instructions on conspiracy were confusing and that the judge commented on the evidence. An appellate court must review the instructions as a whole and defer to a trial judge's language unless he abused his discretion. *United States v. Abushi,* 682 F.2d 1289, 1299 (9th Cir.1982). The instructions on conspiracy, while lengthy, did not misstate the law and the jury was permitted to refer to a written copy of the instructions during its deliberations. Appellant's claim of prejudice is without merit.

*Admission of Hearsay Evidence at Pretrial*

Gish claims that the district judge improperly permitted hearsay evidence during the extensive pretrial suppression hearings. He also asserts that pretrial admission of evidence that guns were present at a number of locations searched prejudiced him because the indictment contained no weapons charges.

 The trial judge is not bound by the hearsay rule in making preliminary determinations such as whether evidence is admissible at trial. Fed.R.Evid. 104(a); *United States v. Matlock,* 415 U.S. 164, 172–74, 94 S.Ct. 988, 993–95, 39 L.Ed.2d 242 (1974). And the district judge properly considered evidence that guns were found at a number of the sites searched. The presence of guns was relevant to determining the legality of those searches. The comments of the trial judge cited by appellant regarding the numerous guns involved in the case were made out of the hearing of the jury and thus could not have prejudiced the triers of fact. Appellant's conviction is therefore affirmed.

The Court has considered other claims made by appellants in this case and finds them to be without merit. The convictions are affirmed in part and reversed in part in accordance with this opinion.